UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AT&T COMMUNICATIONS-EAST, INC.
fka AT&T COMMUNICATIONS, INC., a
Delaware corporation; and AT&T CORP.
fka AMERICAN TELEPHONE AND
TELEGRAPH CO., a New York corporation,

   Plaintiffs,

  v.

BNSF RAILWAY CO. fka BURLINGTON
NORTHERN AND SANTA FE RAILWAY CO.
fka BURLINGTON NORTHERN RAILROAD
CO., a Delaware corporation; PORTLAND &
WESTERN RAILROAD, INC., a New York
corporation; TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON, an
Oregon municipal corporation; and STATE OF
OREGON, by and through its DEPARTMENT OF
TRANSPORTATION,

   Defendants.

_____

Civil No. 06-866-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

  Plaintiffs AT&T Communications-East, Inc. and AT&T Corp. (collectively, plaintiffs or

AT&T) filed this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the

Uniform Relocation Assistance and Real Property Policies Act of 1970, 42 U.S.C. § 4601

OPINION AND ORDER- 1

(hereinafter, the URA).  Plaintiffs seek a declaratory judgment stating that the named defendants

lack authority to force AT&T to relocate fiber optic cable and fiber optic cable facilities between

Beaverton and Wilsonville (the Facilities) to accommodate construction of a commuter light rail

extension unless plaintiffs are reimbursed for costs and expenses by defendants.

Before the court is: (1) a Motion to Dismiss [32] filed by defendant the State of Oregon,

by and through its Department of Transportation (collectively, ODOT); a Motion to Dismiss [23]

filed by defendant Tri-County Metropolitan Transportation District of Oregon (Tri-Met); and (3)

a Motion to Dismiss [36] filed by defendant BNSF Railway Company (BNSF) joining in Tri-

Met's motion for dismissal.  AT&T opposes these motions.  Oral argument was heard on

November 17, 2006.  For the following reasons, the court grants the motions for dismissal.

## BACKGROUND

Plaintiffs' Complaint alleges the following:  BNSF owned land in the form of a railway

corridor that it used for railroad purposes.  In 1987, BNSF and AT&T entered into a Right-of-

Way Agreement (ROW Agreement) that granted to AT&T an easement to construct and operate

a fiber optic cable along BNSF's railroad corridor right-of-way.  Compl. ¶ 10.  Pursuant to that

agreement, AT&T constructed and installed the Facilities along the right-of-way, including the

BNSF Line between Beaverton and Wilsonville.  Compl. ¶ 11.  Section 11(b) of the ROW

Agreement entitles AT&T to compensation of its actual costs and expenses when AT&T is

required to relocate the Facilities to accommodate a third party.  Compl. ¶ 25.

In 1997, BNSF granted a surface easement to defendant Portland & Western Railroad

(P&W), allowing it to use the railway corridor land between Beaverton and Wilsonville.

Defendant P&W claims that the easement constitutes an assignment of BNSF's rights and

OPINION AND ORDER- 2

obligations under the ROW Agreement. The ROW Agreement, however, provides that no assignment shall be valid without the other party's written consent.

In 1998, BNSF entered into a contract with the State of Oregon (known as the Donation Contract), acting through ODOT. In this contract, BNSF agreed to convey its interest in certain rail corridors within Oregon, subject to AT&T's easement. Compl. ¶ 16. By Quitclaim Deed dated May 12, 1998, BNSF conveyed all of its right, title, and interest in the railroad corridor to ODOT, subject to AT&T's easement for the Facilities. Compl. ¶ 17.

In 2000, the United States Department of Transportation Federal Transit Administration (FTA) approved Tri-Met's and ODOT's request to enter preliminary engineering to design and construct a commuter rail line along 14.7 miles of the railroad corridor between Beaverton and Wilsonville (the Project). Compl. ¶ 18.

The Project was authorized by federal law known as the Urban Mass Transportation Act, 49 U.S.C. § 5309(m)(1)(A) and (2)(A). Compl. ¶ 19. Additionally, Congress appropriated $31.26 million in "New Starts" funding for the Project, and the FTA intends to execute a Full Funding Grant Agreement (FFGA) to provide these funds for the Project. Compl. ¶ 18. Plaintiff AT&T asserts that federal funds are provided under a FFGA to assist State and local governmental authorities in financing the relocation of utilities, including telecommunication systems, for fixed guideway corridor projects such as this Project. Compl. ¶ 20.

In November 2002, AT&T notified Tri-Met that the proposed construction plans for the Project appeared to conflict with the location of the Facilities. Plaintiffs provided Tri-Met with drawings. Compl. ¶ 21.

OPINION AND ORDER- 3

On April 4, 2005, P&W notified BNSF that as part of the Project, it intended to reconstruct, rehabilitate, and change portions of the right-of-way between Beaverton and Wilsonville, and that this would necessitate the relocation of the Facilities.  Compl. ¶ 22. Subsequently, P&W and Tri-Met requested AT&T to relocate the Facilities along the Beaverton and Wilsonville railroad corridor at AT&T's expense for the benefit of the Project.  Compl. ¶ 23. Plaintiffs made a preliminary estimate that relocating the Facilities will cost $661,000.  Compl. ¶ 26.

On April 12, 2006, BNSF asserted that the requested relocation of the Facilities is not governed by the ROW Agreement.  Compl. ¶ 27.  BNSF further asserted that AT&T must address directly with P&W and/or Tri-Met any issues pertaining to reimbursement for the relocation.  Compl. ¶ 27.

Construction on the Project along the right-of-way between Beaverton and Wilsonville was expected to begin as early as September 2006.  Compl. ¶ 29.  AT&T has attempted to resolve this dispute with BNSF, P&W, and Tri-Met concerning the relocation of the facilities. All of the named defendants have denied AT&T's requests for reimbursement.  Compl. ¶ 28.

At least one defendant has demanded that AT&T relocate the Facilities at its own cost and expense.  Compl. ¶ 30.  However, AT&T denies that it has an obligation to relocate the Facilities, and argues that to the extent that AT&T may be compelled to relocate, it is entitled to reimbursement from one or more of the defendants under the ROW Agreement and/or the URA. Compl. ¶ 32.

AT&T filed this action to determine the rights, obligations, and liabilities that exist among the parties regarding the Facilities.  Compl. ¶ 34.  AT&T requests that the court enter

OPINION AND ORDER- 4

judgment declaring: (1) P&W, Tri-Met, and ODOT do not have authority under the ROW

Agreement to require AT&T to relocate the Facilities; and (2) if any defendant is determined to

have authority to direct AT&T to relocate any portion of the Facilities along the impacted

segment of the railroad corridor from Beaverton to Wilsonville, then that defendant shall

reimburse AT&T for its actual costs and expenses. Plaintiffs also seek an award of attorney fees

and costs.

## ANALYSIS

Plaintiffs seek reimbursement under the URA, which provides:

> Whenever a program or project to be undertaken by a displacing agency will
> result in the displacement of any person, the head of the displacing agency shall
> provide for the payment to the displaced person of: (1) actual reasonable expenses
> in moving himself, his family, business, farm operation, or other personal
> property; (2) actual direct losses of tangible personal property as a result of
> moving or discontinuing a business or farm operation, but not to exceed an
> amount equal to the reasonable expenses that would have been required to
> relocate such property, as determined by the head of the agency . . . .

42 U.S.C. § 4622(a).

The purpose of the URA is to establish a uniform policy for treatment of individuals and

businesses displaced as a result of federally assisted projects, so that such persons do not suffer

disproportionate harm as a result of public programs. 42 U.S.C. § 4621(b).

### 1.    ODOT's Motion to Dismiss

Defendant ODOT moves to dismiss plaintiffs' claims against it on grounds that the State

of Oregon has Eleventh Amendment immunity from such claims. For the following reasons, the

court agrees that the Eleventh Amendment protects ODOT from suit in these circumstances.

The Eleventh Amendment renders the States immune from "any suit in law or equity,

commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any

OPINION AND ORDER- 5

Foreign State."  Even though the Amendment "by its terms . . . applies only to suits against a State by citizens of another State," the Supreme Court has held repeatedly that this immunity also applies to suits brought by a state's own citizens to which the state does not consent.  *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000).

A state may be subject to suit despite the Eleventh Amendment if the state waives its immunity or if Congress abrogates the state's sovereign immunity.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).  To determine whether Congress has abrogated the States' sovereign immunity, the court asks whether Congress has (1) unequivocally expressed its intent to abrogate the immunity; and (2) acted pursuant to a valid exercise of power.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996), internal quotations and citations omitted.

Because a state can waive its sovereign immunity, the Ninth Circuit treats Eleventh Amendment immunity as an affirmative defense rather than a jurisdictional bar.  *See Miles v. California*, 320 F.3d 986, 988 (9th Cir. 2003); *Hill v. Blind Indus. and Serv. of Md.*, 179 F.3d 754, 762 (9th Cir. 1999).  Accordingly, Eleventh Amendment immunity "must be proved by the party that asserts it and would benefit from its acceptance."  *ITSI T.V. Prod., Inc. v. Agric. Ass'n*, 3 F.3d 1289, 1291 (9th Cir. 1993) (hereinafter, *ITSI*).

Defendant ODOT argues that the Eleventh Amendment bars AT&T's claims against it because the State has not waived its immunity, and nothing in the URA reveals any "unmistakably clear legislative statement" of intent to abrogate sovereign immunity.  Plaintiffs do not challenge this assertion.  Instead, AT&T contends that ODOT has not met its burden of establishing that it is entitled to invoke the Eleventh Amendment privilege.  In support of its

OPINION AND ORDER- 6

argument, AT&T points to a line of Ninth Circuit cases discussing when an entity qualifies as an "arm of the state" and so is entitled to assert the State's Eleventh Amendment immunity. *See generally ITSI* (organization which organized state and local fairs in California was not an arm of the state and could not invoke Eleventh Amendment immunity); *Beentjes v. Placer Cty. Air Pollution Control Dist.*, 397 F.3d 775 (9th Cir. 2005) (California's air pollution control districts were not arms of the state and could not invoke immunity).

Under the "arm of the state" doctrine, a state agency is immune from suit under the Eleventh Amendment if the state is the "real, substantial party in interest" and is empowered to invoke its sovereign immunity from suit, even though individual officials or state entities are nominal defendants. *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir. 1991), internal quotation and citations omitted. Sovereign immunity cloaks the state agent or agency because, if the plaintiff prevails, such a judgment "would have the same effect as if it were rendered directly against the State for the amount specified in the complaint." *Id.*, internal quotation and citations omitted.

The "arm of the state" doctrine is inapposite here because AT&T has sued the State of Oregon itself, and not just a public entity of the state. AT&T's Complaint named the "State of Oregon, by and through the Oregon Department of Transportation" as a defendant. In so doing, the Complaint makes the State of Oregon a "real, substantial party in interest," such that any judgment against ODOT would ultimately be a judgment against the State of Oregon.

Additionally, ODOT qualifies as an arm of the state. To determine whether a public entity qualifies as an arm of the state for purposes of asserting the state's immunity, the Ninth

OPINION AND ORDER- 7

Circuit applies a test known as the "*Mitchell* test."  *See generally Mitchell v. Los Angeles Cmty.*

*Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988).   This test sets out five parts:

> (1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has power to take property in its own name or only the name of the state, and (5) the corporate status of the entity.  To determine these factors, the court looks to the way state law treats the entity.

*See ITSI*, 3F.3d at 1292, quoting *Mitchell*, 861 F.2d at 201. (9th Cir. 1988).

The first factor predominates because "the impetus of the Eleventh Amendment is the prevention of federal-court judgments that must be paid out of a state's treasury . . . ."  *Beentjes*, 397 F.3d at 778, internal quotation and citation omitted.

The question is "whether a judgment against the defendant entity under the terms of the complaint would have to be satisfied out of the limited resources of the entity itself or whether the state treasury would also be legally pledged to satisfy the obligation." *Durning*, 950 F.2d at 1424.  For purposes of this inquiry, "it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant." *Beentjes*, 397 F.3d at 779, quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997) internal quotation omitted.

Plaintiffs argue that this declaratory judgment action does not implicate payment from Oregon's treasury.  Additionally, AT&T argues that, even assuming that a money judgment would be rendered against ODOT, the judgment would be paid out of federal funds already appropriated by Congress, and not paid from state funds.

These arguments fail.  First, the obligation at issue is financial in nature and does implicate payment by ODOT.  Plaintiffs ask the court to declare that the defendants, including

OPINION AND ORDER- 8

ODOT, must reimburse AT&T for its relocation expenses if they require AT&T to relocate the Facilities for the benefit of the Project.

Second, any federal funds earmarked for relocation benefits would necessarily flow through ODOT's Operating Fund, which is "established in the State Treasury." *See* ORS 184.642, *et seq.,* (requiring all expenses of ODOT to be paid out of the Department of Transportation Operating Fund, which is "established in the State Treasury separate and distinct from the General Fund and separate and distinct from the State Highway Fund"); ORS 184.691 ("Except as otherwise provided by law, all moneys received by [ODOT] for public transit purposes, from whatever source, shall be paid into the State Treasury and credited to the account").  Since any money judgment against ODOT must be satisfied from Oregon's treasury, ODOT meets the first and predominant *Mitchell* factor.

Additionally, ODOT satisfies *Mitchell's* second factor, which calls for an evaluation of whether the entity addresses "a matter of statewide rather than local or municipal concern, and the extent to which the state exercises centralized governmental control over the entity." *Beentjes*, 397 F.3d at 782, internal quotation and citation omitted.

Plaintiffs argue that "there is no evidence that ODOT is carrying out a central governmental function of the state."  Pls.' Mem. in Opp'n  to Def. Or. Dept. of Transp.'s Mot. to Dismiss at 8.   Plaintiffs rely upon two Ninth Circuit cases that held that public schooling and administering local county jails were not central public functions.  *See Eason v. Clark Cty. Sch. Dist.*, 303 F.3d 1137, 1143-44 (9th Cir. 2002) (public schooling is not a state-wide function); *Streit v. Cty. of Los Angeles*, 236 F.3d 552, 567 (9th Cir. 2001) (administering local county jails is not a central government function).

OPINION AND ORDER- 9

However, these cases are unhelpful because they involved entities whose primary function was local. By contrast, ODOT is charged with "develop[ing] and maintain[ing] a state transportation policy and a comprehensive, long-range plan for a safe, multimodal transportation system for the state . . . ." ORS 184.618. Unlike public schooling or administering a county jail, designing and maintaining Oregon's public transportation system presents a matter of statewide rather than local or municipal concern. Therefore, ODOT performs a central government function. *See Beentjes*, 397 F.3d at 782.

There is no dispute that ODOT fails to meet factors three and four, since it has the power to sue and be sued, and to acquire property in its own name. *See* ORS 184.689.

The court finds no basis for concluding that ODOT fails the fifth and final factor, which concerns "the extent to which . . . an entity [is] distinct from the state." *Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1188 (9th Cir. 2003). On the contrary, in terms of its funding, organization, and day-to-day functions, ODOT is under the centralized control of the State of Oregon. *See* ORS 184.610, *et seq.*

After considering all of the *Mitchell* factors – especially including the predominant factor of state funding, which weighs strongly in favor of Eleventh Amendment immunity – this court declines to deny ODOT immunity.

Moreover, this court finds no material issues regarding disbursements that should preclude ODOT's dismissal at this point. As discussed above, Oregon law provides that any federal funds appropriated to ODOT must go through Oregon's treasury, and thus any judgment against ODOT would be satisfied out of state funds. How the federal funds are distributed or used beyond that is largely irrelevant for purposes of the *Mitchell* test.

OPINION AND ORDER- 10

For the reasons stated regarding immunity, this court need not address ODOT's other arguments that dismissal is also proper on grounds that the court lacks subject matter jurisdiction, and because plaintiffs have failed to state a claim upon which relief can be granted. These arguments are moot because the Eleventh Amendment requires dismissal of the State and ODOT from the action.

### 2.    Tri-Met's and BNSF's Motions to Dismiss

Defendants Tri-Met and BNSF (collectively herein, defendants) move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss on grounds that plaintiffs have failed to state a claim upon which relief can be granted. For the following reasons, the court agrees.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), an action must be dismissed if the defendant establishes that the plaintiff failed to state a claim upon which relief can be granted. Generally, a Rule 12(b)(6) motion for dismissal is denied "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his [or her] claim" that would entitle plaintiff to relief. *SmileCare Dental Group v. Delta Dental Plan of Calif., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996), citation omitted. For the purposes of a Rule 12(b)(6) motion to dismiss, the complaint must be construed liberally in favor of the plaintiff, and all factual allegations set forth in the complaint are to be accepted as true. *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004). The motion is granted only if, after accepting all well-pleaded allegations in the complaint as true and viewing them in a light most favorable to the plaintiff, the plaintiff is deemed not entitled to relief. *Id*.

The parties have submitted declarations and exhibits in support of their briefing, including a copy of the ROW Agreement. *See* Decl. of Gary N. Hardiman in Supp. of Def. Tri-

OPINION AND ORDER- 11

County Metro. Transp. Dist. of Or.'s Mot. to Dismiss, Ex. A (hereinafter, the ROW Agreement).

As a general matter, a district court may not consider any material outside of the pleadings when

ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Rule 12 provides that when

> matters outside the pleadings are presented to and not excluded by
> the court, the motion shall be treated as one for summary judgment
> and disposed of as provided in Rule 56, and all parties shall be
> given reasonable opportunity to present all material made pertinent
> to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).

However, a court may consider (1) matters of public record, and (2) material that the

plaintiff properly submitted as part of the complaint or, even if not physically attached to the

complaint, material that is not contended to be inauthentic and that is necessarily relied upon by

the plaintiff's complaint. *Lee*, 250 F.3d at 688, citations omitted.

Although plaintiffs did not physically attach the ROW Agreement to its Complaint, the

Agreement was necessarily relied upon by the Complaint. In particular, the Complaint relied

upon the Section of the ROW Agreement pertaining to "Relocations" and quoted Section 11(b)

explicitly. Compl. ¶ 25. Moreover, the parties do not dispute the authenticity of the ROW

Agreement. Accordingly, the court concludes that it may consider the ROW Agreement for

purposes of resolving defendants' Motions to Dismiss without converting these motions into

motions for summary judgment.

Tri-Met argues that the ROW Agreement obligates AT&T to relocate at its own expense

to accommodate the Project. Tri-Met cites Section 11(a) of the Agreement, which provides:

> If Railroad determines that the location of any of the AT&T
> Facilities must be changed for the relocation or placement of

OPINION AND ORDER- 12

> railroad tracks or Railroad operational improvements, or for any
> reasons beyond the control of Railroad, . . . AT&T shall move the
> affected AT&T Facilities to such alternative location at AT&T's
> own expense, cost and risk as soon as practicable.

ROW Agreement at 25-26.

It is undisputed that AT&T was asked to relocate the Facilities to allow for the placement of light rail tracks. Therefore, the court concludes that the Project falls squarely under Section 11(a). The only remaining question is whether AT&T's obligation to relocate at its expense survived BNSF's conveyance of the railroad right-of-way.

Tri-Met contends that AT&T's obligation to relocate at its own expense "ran with the land" along with the easement entitling it to use the railroad right-of-way, and therefore the holder of the servient estate may require AT&T to relocate at its own expense under Section 11(a). In reaching this conclusion, Tri-Met relies on an unpublished opinion by Judge Aiken. *MCI Telecomm. Corp. v. Tri-County Metro. Transp. Dist. of Or.*, 97-807 (D. Or. 1998) (copy attached as Ex. G of Decl. of Gary N. Hardiman in Supp. of Def. Tri-County Metro. Transp. Dist. of Or.'s Mot. to Dismiss) (hereinafter, *MCI*). The court takes judicial notice of *MCI* as an undisputed matter of public record. *Lee*, 250 F.3d at 689-90.

In *MCI*, BNSF conveyed a railroad corridor to Tri-Met subject to an easement with language identical to Section 11(a) of the ROW Agreement quoted above. *MCI*, at 5. The court concluded that the provision obligated MCI to relocate in order to accommodate the placement of light rail tracks. The court rejected MCI's argument that Tri-Met could not enforce the relocation obligation because BNSF never assigned the ROW Agreement to Tri-Met. The court reasoned that the relocation obligation was one of the conditions and terms under which the easement was created, and so the relocation obligation ran with the land along with the easement

OPINION AND ORDER- 13

itself.  Therefore, when BNSF conveyed its interest in the underlying property to Tri-Met,

"Tri-Met succeeded to a servient estate, encumbered by MCI's right to maintain the [facilities] on

Tri-Met's property, and MCI retained the easement and the corresponding relocation

obligations."  *MCI*, at 8.

Plaintiffs contend that *MCI* is distinguishable from this case because in the *MCI* decision

BNSF deeded its property to Tri-Met; here, BNSF did not deed the railroad corridor to Tri-Met

or P&W.  Plaintiffs also assert that, contrary to the facts in the *MCI* case, BNSF here reserved its

rights and obligations under the ROW Agreement when it conveyed its interest in the railroad

corridor to ODOT.

Both arguments are without merit.  First, the Complaint at bar states that BNSF conveyed

the rail corridor to the State, acting through ODOT, "subject to . . . the easement granted to

AT&T."  Compl. ¶ 16.  BNSF's undisputed conveyance of the underlying property to ODOT

places ODOT in a position analogous to Tri-Met in *MCI*, and causes AT&T's easement to run

with the land.

Second, whether BNSF reserved its rights and obligations under the ROW Agreement is

irrelevant to whether AT&T is obligated to relocate the Facilities at its own expense for

placement of light rail tracks.  If ODOT took the property subject to AT&T's easement, then it

also succeeded to BNSF's right to make AT&T relocate the Facilities under Section11(a).  When

property that is subject to an easement is conveyed, the terms and conditions under which the

easement was created govern.  *See, e.g.*, *Northwest Natural Gas Co. v. City of Portland*, 690

P.2d 1099, 1101-02 (Or. App. 1984) (servient estate's right to reimbursement ran with the land

when dominant estate conveyed the property).  The right to compel AT&T to relocate the

OPINION AND ORDER- 14

Facilities at its expense to allow for the placement of railroad tracks was a term and condition of AT&T's easement.

Similarly, AT&T does not qualify as a "displaced person" and is not entitled to reimbursement under the URA. *See Consumers Power Co. v. Costle*, 615 F.2d 1147, 1148-49 (6th Cir. 1980) (because no property right was lost and none acquired, plaintiff power company was not a "displaced person" entitled to reimbursement under the URA). Because the terms of AT&T's easement fail to empower AT&T to maintain the Facilities in the face of a competing light rail need, no property right will be lost if the owner of the right-of-way requires AT&T to relocate the Facilities at its own expense.

Defendants also argue for dismissal on grounds that the court lacks federal subject matter jurisdiction, and that ODOT is an indispensable party that cannot be joined. The court need not reach these subject matter jurisdiction and non-joinder issues because, as a matter of law, AT&T is not entitled to reimbursement under the ROW Agreement or the URA, and so has failed to state a claim upon which relief can be granted.

## **CONCLUSION**

As an "arm of the state," ODOT is immune from suit under the Eleventh Amendment. Accordingly, ODOT's Motion to Dismiss [32] is GRANTED, and the State of Oregon and ODOT are dismissed from the action. Moreover, AT&T has no claim for reimbursement under its easement or the URA, and fails to state a cause of action upon which relief can be granted. Accordingly, Tri-Met's Motion to Dismiss [23], and BNSF's Motion to Dismiss [36] joining Tri-Met's motion, are GRANTED. AT&T's claims are dismissed with prejudice.

IT IS SO ORDERED.

OPINION AND ORDER- 15

DATED this ___27___ day of November, 2006.




                                              _____/s/ ANCER L. HAGGERTY_____
                                                  ANCER L. HAGGERTY
                                                  United States District Judge

OPINION AND ORDER- 16